IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Royal Lee Gibson, ) | C/A No. 0:10-1988-CMC-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

    This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Royal Lee Gibson ("Gibson"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be reversed and the case remanded.

**ADMINISTRATIVE PROCEEDINGS**

    In January 2007, Gibson applied for DIB, alleging disability beginning December 20, 2004. Gibson's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on August 11, 2009, at which Gibson, who was represented by Melissa L. Franklin, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on August 31, 2009 denying benefits and concluding that Gibson was not disabled. (Tr. 20-28.)

    Gibson was thirty-nine years old at the time of his alleged disability onset date. (Tr. 32.) He has a high school education and past relevant work experience as a truck driver. (Tr. 150, 154.)

Gibson alleges disability since December 20, 2004 due to post-traumatic stress disorder, a head injury, and a rib cage injury. (Tr. 149-50.)

The ALJ found as follows:

1. The claimant meets the insured status requirements of Title II of the Social Security Act through the date of this decision.

2. The claimant has engaged in substantial gainful activity since December 20, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*).
    * * *
3. The claimant has the following severe impairment: post-traumatic stress disorder (20 CFR 404.1520(c)).
    * * *
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
    * * *
5. After careful consideration of the entire record, the undersigned finds that physically the claimant has the residual functional capacity to perform work, but because of his post-traumatic stress disorder, he needs to avoid stressful work (such as work with the public which would involve the resolving of disputes). Thus he requires work involving limited public contact.
    * * *
6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
    * * *
7. The claimant was born on [REDACTED], 1965 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).
    * * *

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from December 20, 2004 through the date of this decision (20 CFR 404.1520(g)).

(Tr. 13-21.) On June 4, 2010, the Appeals Council denied Gibson's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner

must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Gibson raises the following issues for judicial review:

I.   The ALJ did not consider all of Gibson's severe impairments.

II.       The ALJ did not perform the analysis of the treating and evaluating physician opinions required by 20 CFR § 404.1527(d)(1)-(6), SSR 96-2p and SSR 96-5p.

(Pl.'s Br., ECF No. 18.)

## DISCUSSION

### A.    Treating Physicians[1]

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

The crux of Gibson's argument is that the ALJ erred in failing to apply properly the factors as specified in 20 C.F.R. § 404.1527(d) in evaluating the opinions of Dr. Darren Whitlock and Dr.

---

[1] Upon review of the parties' arguments, the court finds that Gibson's second issue in this matter directly impacts his first issue. Therefore, the court addresses Gibson's argument regarding his treating physicians first.

Ramanujam Mohan, Gibson's treating physicians. The ALJ acknowledged that both of these doctors issued opinions that reported disabling limitations; however, she found that they were not entitled to controlling weight because "they are inconsistent with other substantial evidence of record as noted in Finding #4 and particularly the assessment of Dr. Payne[2] concluding that the claimant was promoting symptoms." (Tr. 26) (citations omitted). The ALJ did not provide any further discussion or evaluation of these opinions.

The court observes that on June 16, 2009, Dr. Whitlock completed two disability questionnaires. (Tr. 935-36.) In these questionnaires, Dr. Whitlock indicated that Gibson should not perform any lifting; pushing or pulling; continuous walking or standing to exceed fifty percent of work time; crawling, kneeling, or cramped positions; work requiring repeated stooping; or work exposing him to vibrating tools. (Tr. 935.) Dr. Whitlock affirmed that Gibson would not be able to engage in work activity more than twenty hours per week; that his pain would cause him to miss more than three days of work per month; that his condition would substantially limit his ability to sit throughout the day; and that his condition would limit his ability to stand and walk for more than a few hours per day. (Tr. 936.) Dr. Whitlock noted that Gibson has chronic PTSD, organic brain syndrome, and dislocated rib cartilage. (Id.)

On September 17, 2007, Dr. Mohan completed a form entitled "MEDICAL OPINION RE: ABILITY TO DO WORK-RELATED ACTIVITIES (MENTAL)." (Tr. 649-52.) Dr. Mohan indicated that Gibson had poor or no abilities in all areas listed under mental abilities and aptitude needed to do unskilled work. In support of these limitations, Dr. Mohan explained that Gibson "has severe PTSD & traumatic brain injury. He is chronically anxious; very perturbed by any noise; poor

---

[2] Dr. Douglas S. Payne performed a consultative psychological evaluation of Gibson in June 2007. Dr. Payne found that during the examination, Gibson was promoting his symptoms, resulting in invalid test results. (Tr. 625-29.)

memory & concentration. He is easily confused and cannot remember instructions even for a short time. [G]ets agitated easily around any noise." (Tr. 650.) Dr. Mohan also indicated that Gibson had no abilities in all areas listed under mental abilities and aptitude needed to do semiskilled and skilled work, explaining that Gibson "cannot remember instructions even for a few minutes & repeatedly asks the same questions. He is incapable of dealing with any stress in a work related environment." (Tr. 651.) Finally, in the areas listed under mental abilities and aptitudes needed to do particular types of jobs, Dr. Mohan indicated that Gibson had fair abilities to maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and use public transportation; however, he stated that Gibson had poor abilities to interact appropriately with the general public and in traveling in unfamiliar places. (Id.) Dr. Mohan also indicated that Gibson would miss more than four days per month of work and would not be able to manage benefits in his own best interest. (Tr. 652.)

In support of his argument that the ALJ improperly rejected the opinions of his treating physicians, Gibson argues that Finding #4 of the ALJ's opinion does not contain a specific citation to or description of any of the medical evidence in the record, and therefore, the only evidence specifically cited by the ALJ is a one-time consultative psychological evaluation indicating that Gibson was promoting his symptoms.[3] Further, Gibson points to significant medical evidence supporting the treating physicians' assessments that the ALJ did not discuss or acknowledge.

In support of Dr. Whitlock's opinion, Gibson also points out that, other than discussing Dr. Payne's psychological consultative examination, the ALJ summarized the medical evidence in one

---

[3] The Commissioner concedes that Finding #4 only dealt with mental impairments, not the physical impairments addressed by Dr. Whitlock. The court observes that Finding #4 discusses whether Gibson's impairments meets or medically equals one of the listed impairments. This discussion contains little, if any, discussion of the medical evidence in the record.

paragraph of the opinion; however, this paragraph only contains one reference to medical records concerning Gibson's physical impairments. Specifically, the ALJ stated that "[i]n April 2006, the claimant was noted to show no evidence for significant rib cage problems." (Tr. 25.) Gibson argues that the ALJ failed to consider or address any of the records that support Dr. Whitlock's physical limitations. For example, Gibson points out that the record contains objective evidence documenting problems with Gibson's rib cage. (<u>See</u> Tr. 663) (April 2007: diagnosing Gibson with costochondritis[4]); (Tr. 685) (April 2007: "Pain is reproduced in the upper half of the sternum with palpation. Exam reveals notable crepitus, mobility and increased pain with palpation of the left anterior/lateral 7-9 ribs."); (Tr. 849) (March 2007: "brace in place extending up to rib cage; could palpate rib 'clicking' with activity and deep respiration; [tenderness to palpation] over costal cartilage"); (Tr. 544) (February 2005: MRI revealed "a focal area of abnormal activity at the most distal aspect of the left first rib where it joins the fossa cartilage" and "[f]ocal uptake in the distal portion left first rib consistent with trauma either to the rib or at the costochondral junction"); (Tr. 610-11) (October 2004: "Ribs showed abnormalities with increased laxity of ribs on left and disruption of normal costochondral margin in lower rib cage."). Gibson argues that the although the ALJ is not required to discuss every piece of evidence, by only mentioning one medical record concerning Gibson's rib cage impairment in the opinion, the ALJ's opinion regarding the evaluation of Dr. Whitlock's opinion as well as her conclusion that Gibson's rib cage strain/pain is a non-severe impairment is not supported by substantial evidence.

---

[4] "Costochondritis" is defined as "[i]nflamation of the costochondral joints of the chest, which can cause chest pain. The pain of costochondritis can sometimes be distinguished from other, more serious forms of chest pain by its reproducibility on palpation of the involved joints and the absence of abnormalities on chest x-ray examinations, electrocardiograms, and blood tests." <u>Taber's Cyclopedic Medical Dictionary</u> 492 (20th ed. 2005).

In response, the Commissioner essentially argues that Gibson "had a penchant for magnifying his complaints and that this so undermined his credibility that the ALJ properly gave little weight to any of the evidence that relied on his subjective allegations, including his complaints of pain, his physicians' assessments of his ability to work, and the VA's assessment of his impairments." (Def.'s Br. at 7, ECF No. 20 at 7.)

Upon a thorough review of the record as a whole, the court is unable to determine whether the ALJ's decision with regard to the opinions of Dr. Whitlock and Dr. Mohan is supported by substantial evidence. While an ALJ may not be required to discuss every piece of evidence, in this case the record reveals significant evidence not addressed or acknowledged by the ALJ that does not support the ALJ's decision and that does not appear to rely solely on Gibson's subjective complaints. See, e.g., Seabolt v. Barnhart, 481 F. Supp. 2d 538, 548 (D.S.C. 2007) ("The ALJ is not required to discuss every piece of evidence, but if he does not mention material evidence, the court cannot say his determination was supported by substantial evidence."). In addition to the records discussed above, the court observes that Dr. Mohan articulated specific reasons for the limitations contained in his opinion, which the ALJ similarly failed to address or acknowledge. Further, there is no indication that the ALJ applied any of the factors discussed above in evaluating the opinions of treating physicians, other than conclusorily stating that their opinions are "inconsistent with other substantial evidence of record." (Tr. 26.) Additionally, the notes and records discussed above undermine the ALJ's reasons for discounting these opinions and the ALJ's determination that Gibson was not under a disability during this time. While the additional evidence discussed above may not ultimately change the ALJ's decision, at the very least, the failure of the ALJ to address these records that appear to support the opinions of the treating physicians prevents the court from determining that the ALJ's decision to discount these opinions is supported by substantial evidence and consistent

with controlling law. Because the ALJ's reconsideration of these opinions may affect his final decision on Gibson's application for disability benefits, the court cannot find that any error is harmless. Therefore, the court is constrained to recommend remanding this matter for further consideration.

**B.     Other Issues**

Reconsideration of Dr. Whitlock's and Dr. Mohan's opinions may affect the ALJ's determination that Gibson only suffered from one severe impairment. Further on remand, Gibson may present his arguments that the ALJ did not consider statements from other physicians and psychiatrists, opining that Gibson was disabled or assigning a GAF score that would indicate an inability to perform gainful activity, and that the ALJ failed to acknowledge or evaluate the determination by the Department of Veteran's Affairs that Gibson was disabled. (See Pl.'s Br. at 36-40, ECF No. 18 at 36-40.) Therefore, the court need not address Gibson's remaining issues, as they may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments).

## RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further administrative action as set forth above.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 9, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).